# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**COURTNEY WALTERS,**

    **Plaintiff,**

    v.

**APRIL D. JONES,**

    **Defendant.**

Case No. 1:21-cv-73

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

This cause is before the Court on Defendant April Jones's Motion for Judgment on the Pleadings (Doc. 10), which the Court construes as a motion for summary judgment, and also on Jones's Motion for Summary Judgment (Doc. 32), as well as Plaintiff Courtney Walters' Motion in Limine (Doc. 34) to exclude testimony of Jones's expert, Wayne Wallace. Because there is a genuine dispute as to whether Walters exhausted her remedies as required by the Prison Litigation Reform Act (PLRA) before filing this lawsuit, and because a reasonable jury could conclude that Jones used excessive force against Walters, the Court **DENIES** Jones's Motions (Docs. 10, 32). Because the testimony of Jones's proposed expert would not assist the jury in determining whether Jones used excessive force, the Court also **GRANTS** Walters' Motion in Limine (Doc. 34) to exclude that expert's testimony.

## BACKGROUND

On April 19, 2019, Walters was arrested and incarcerated in the Hamilton County Justice Center (the "Jail"). (Walters Dep., Doc. 16, #142). On August 20, 2019,

Walters had an altercation involving several corrections officers, four of whom eventually subdued her and "[took] her to the ground." (Durham Dep., Doc. 25, #352–53). While the officers were holding Walters on the ground, Jones, a corrections officer, ran up to Walters and kicked Walters in the head. (*Id.* at #353). Jones says the kick was an accident. (Jones Decl., Doc. 31, #493). Video footage captured the kick and preceding events. (*See* Durham Dep., Doc. 25, #352–53).

Walters cried out when Jones kicked her. At first, Walters mistakenly yelled that another officer had done so. (Walters Dep., Doc. 16, #167–68). According to Walters, the kick left Walters with a "large lump on [her] forehead" and caused her pain, dizziness, and nausea for a few weeks. (Walters Decl., Doc. 33-1, #519). Walters was a pretrial detainee at the time. (*Compare* Am. Compl., Doc. 3, #21, *with* Answer, Doc. 5, #25).

Another corrections officer, Jamelia Durham, reported Jones for what Durham considered to be excessive force in connection with the incident involving Walters. (Durham Dep., Doc. 25, #350). Other than in connection with this case, Durham has never reported a colleague for excessive force. (*Id.*). Durham was one of the officers holding Walters down on the floor, and saw Jones run toward Walters and kick her. (*Id.* at #352–53). In Durham's view, the kick was not an accident. (*Id.* at #354). According to Durham, the other officers who were holding Walters down agreed with Durham that Jones subjected Walters to an intentional "soccer kick." (*Id.*). Durham also testified that after Durham reported Jones for the incident, Jones's significant

other, Brian Ludwig, who also works as an officer at the Jail, asked another Jail officer how much he could pay that officer to "beat up" Durham. (*Id.*).

In the weeks following the incident, Scott Kerr, a Captain in the Corrections Section at the Jail, requested that the Internal Affairs Section investigate Jones's use of force against Walters, noting that "[a] video recording of the incident appears to support [Walters'] allegation" that Jones kicked her in the head. (Internal Affs. Mem., Walters Dep. Ex. 10, Doc. 16-10, #197). In connection with the investigation, Jail personnel interviewed Durham, Jones, and other officers who were present. Jones claimed that the contact between her foot and Walters' head was accidental. (*Id.* at #200).

Walters testified that she filed a grievance based on this incident within a day or two after it occurred. (Walters Dep., Doc. 16, #152). She says she did so by physically placing a written grievance form into a "blue box" in the sally port at the Jail. (*Id.* at #151). Walters further testified that she later filed at least one additional grievance in connection with this incident on November 30, 2020. (*Id.* at #158). The record does not contain a copy of the first grievance Walters says she filed, but it does contain a copy of the alleged November 30, 2020, grievance. (*See* 11/30/20 Grievance, Walters Dep. Ex. 8, Doc. 16-8, #195). Walters claims she made that copy before putting the original into the blue box. (Walters Dep., Doc. 16, #159). In a March 9, 2021, Declaration, the Jail's Grievance Coordinator, William C. Wietmarschen, says he conducted a search and found no record of any such grievances by Walters. (Wietmarschen Decl., Doc. 9, #44). The Jail's grievance policy requires an inmate to

3

file a grievance within ten days of the events that form the basis for the grievance. (Grievance P., Wietmarschen Decl. Ex. 1, Doc. 9-1, #46).

Several inmates other than Walters have submitted sworn statements saying that, in connection with an otherwise unrelated incident that occurred on January 30, 2021, one of the Jail's other corrections officers, Lea Scuitto, tauntingly told all of them that grievances filed at the Jail are thrown away. (Scott Decl., Doc. 17-4, #219; Sturgeon Decl., Doc. 17-5, #220; Creighton Decl., Doc. 17-6, #222). A February 11, 2021, Grievance Response Form that Wietmarschen completed in connection with this incident does not say anything about Scuitto's alleged comment about grievances, but he does say that Scuitto admitted to arguing with several inmates and apologized to them later. (Grievance Resp. Form, Scuitto Dep. Ex. 2, Doc. 20-2, #284). Other inmates have also submitted sworn statements saying more generally that Jail officials do not act on their grievances. (Lane Decl., Doc. 17-2, #215; Bray Decl., Doc. 17-3, #216; Allen Decl., Doc. 17-7, #225; Stevens Decl., Doc. 17-8, #226).

For her part, Scuitto denies saying that grievances filed at the Jail are thrown away and also alleges that Walters tried to bribe Scuitto to support Walters' story in connection with the August 20, 2019, incident. (Scuitto Dep., Doc. 20, #249–50). Walters, in turn, denies that she tried to bribe Scuitto. (Walters Dep., Doc. 16, #161).

On December 8, 2020, Walters filed her Complaint (Doc. 2) in the Hamilton County Court of Common Pleas. Walters then filed an Amended Complaint (Doc. 3) on January 28, 2021. Walters sues under 42 U.S.C. § 1983, alleging that Jones violated Walters' Fourth and Fourteenth Amendment rights by using excessive force

4

against Walters. (Am. Compl, Doc. 3, #22). Walters sues Jones in Jones's individual capacity. (*Id.* at #21). Jones removed to this Court (Doc. 1) on February 1, 2021, and then filed her Answer (Doc. 5) on February 4, 2021.

On March 10, 2021, Jones filed what she styled a Motion for Judgment on the Pleadings (Doc. 10). Jones argues that Walters did not exhaust her administrative remedies at the Jail before filing suit as the PLRA requires. (Mot. for J. on the Pleadings ("Exhaustion Mot."), Doc. 10, #55). Walters responded in opposition (Doc. 12) on March 11, 2021. That same day, the Court held a telephonic status conference with the parties and informed them that it would treat Jones's Motion (Doc. 10) as a motion for summary judgment on the issue of failure to exhaust. (*See* 3/11/21 Minute Entry; *see also* Reply in Supp. of Mot. for J. on the Pleadings ("Exhaustion Reply"), Doc. 22, #337). Accordingly, the parties engaged in limited discovery on that issue. Walters then filed a second Response in Opposition (Doc. 17) to Jones's Motion (Doc. 10) on April 24, 2021, attaching the inmate declarations regarding the January 30, 2021, Scuitto incident discussed above. Jones replied in support (Doc. 22) of her Motion (Doc. 10) on May 11, 2021.

On October 25, 2021, Jones disclosed Wayne Wallace, a former law enforcement officer who holds a Ph.D. in Forensic Psychology from Walden University, as an expert witness. (*See* Wallace Rep., Wallace Dep. Ex. 5, Doc. 29-1, #462). In his proposed expert report, Wallace concluded that the contact between Jones's foot and Walters' head was "incidental," and that, overall, the officers used "insufficient force" against Walters under the circumstances. (*Id.* at #456–57).

5

On November 15, 2021, Jones filed her Motion for Summary Judgment (Doc. 32), arguing both that Walters did not exhaust her administrative remedies at the Jail (the same issue she had raised in her Motion for Judgment on the Pleadings (Doc. 10)) and that Jones did not violate Walters' constitutional right to be free from excessive force. Walters filed her opposition (Doc. 33) on November 22, 2021, and Jones replied in support (Doc. 35) on December 6, 2021. Separately, on November 22, 2021, Walters filed a Motion in Limine (Doc. 34) to exclude Wallace's proposed expert testimony. That motion is likewise fully briefed.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lansing Dairy*, 39 F.3d at 1347.

This Court is not obliged to search the record sua sponte for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404–06 (6th Cir. 1992). Instead, the nonmoving party must "designate specific facts or evidence in dispute." *Jordan v. Kohl's Dep't Stores, Inc.*, 490 F. App'x 738, 741 (6th Cir. 2012) (quotation omitted). If

the nonmoving party fails to make the necessary showing for an element upon which it bears the burden of proof, then the moving party is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323.

Granting summary judgment depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In sum, the nonmoving party, at this stage, must present some "sufficient disagreement" that would necessitate submission to a jury. *See Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

In making that determination, though, the Court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party."). Accordingly, summary judgment is not the place for "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," which should instead be left for the jury at trial. *Anderson*, 477 U.S. at 255.

**LAW AND ANALYSIS**

This case presents (1) a procedural issue—whether Walters exhausted her Jail remedies before filing this suit, as required by the PLRA, (2) a substantive issue—whether Jones used excessive force against Walters, and (3) an evidentiary issue—whether Wallace can offer competent expert evidence relevant to any material issue in this case. As discussed in more detail below, as to the first, there is a genuine dispute as to whether Walters filed a grievance at the Jail, and therefore Jones is not entitled to summary judgment based on the affirmative defense of failure to exhaust. As to the second, there is evidence in the record from which a reasonable jury could conclude that Jones used excessive force against Walters, and that Jones is not entitled to qualified immunity. And finally, the testimony of Jones's proposed expert is inadmissible because it would not assist the jury in determining any material issue in this case.

**A. There Is A Genuine Dispute As To Whether Walters Exhausted Her Administrative Remedies.**

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Jones v. Bock*, 549 U.S. 199, 211–12 (2007). Moreover, a remedial process is not "available" to the extent that corrections officers prevent inmates from using it. *Ross v. Blake*, 578 U.S. 632, 644 (2016). Indeed, courts regularly deny summary judgment on the issue

of exhaustion where an inmate claims to have filed a grievance that the facility denies having received. *See, e.g.*, *Odom v. Bolton*, CIVIL ACTION NO. 3:17-CV-398-CRS, 2020 WL 417780, at *3 (W.D. Ky. Jan. 27, 2020) (genuine dispute whether inmate handed grievance form to case worker); *Curtis v. Timberlake*, 436 F.3d 709, 711–12 (7th Cir. 2005) (genuine dispute whether inmate handed grievance form to social worker); *Kantamanto v. King*, 651 F. Supp. 2d 313, 324 (E.D. Pa. 2009) (genuine dispute whether inmate sent letter appealing denial of initial grievance); *Johnson v. Tedford*, 616 F. Supp. 2d 321, 326 (N.D.N.Y. 2007) (inmate's claim he filed grievance that received no response or grievance number created genuine dispute).

Here, Walters' sworn testimony is that she filed a grievance by placing a document in a designated box located in the Jail's sally port within days after Jones kicked Walters in the head. (Walters Dep., Doc. 16, #151–52). Jones does not dispute that placing a written grievance form into that box was one way of filing a grievance at the Jail. (*See* Exhaustion Mot., Doc. 10, #56). Instead, Jones asks the Court to conclude that Walters is not telling the truth. (*See* Exhaustion Reply, Doc. 22, #341). We know Walters is lying, Jones says, because Wietmarschen's search found no such grievance. (*See* Exhaustion Mot., Doc. 10, #56).

Jones's argument does not provide an appropriate basis for summary judgment. Walters' testimony that she placed a grievance document in the box within days of the incident in question creates a genuine dispute as to whether Walters initiated the grievance process at the Jail. How Walters' testimony stacks up against the Jail's competing evidence that it has no record of such a grievance is not for the

9

Court to decide on summary judgment. *See Anderson*, 477 U.S. at 255. This is especially so given that failure to exhaust is an affirmative defense on which Jones bears the burden of proof. *Bock*, 549 U.S. at 211–12.

And even if Walters' testimony alone were not enough to create a genuine dispute on the issue, thereby precluding summary judgment, the record also contains sworn testimony from numerous other inmates that the Jail has a practice of failing to respond to their grievances and that a corrections officer even told them that Jail personnel throw grievances away. (Scott Decl., Doc. 17-4, #219; Sturgeon Decl., Doc. 17-5, #220; Creighton Decl., Doc. 17-6, #222; Lane Decl., Doc. 17-2, #215; Bray Decl., Doc. 17-3, #216; Allen Decl., Doc. 17-7, #225; Stevens Decl., Doc. 17-8, #226). Further, Durham's testimony that Ludwig asked another corrections officer to physically assault Durham in retaliation for Durham reporting Jones's use of force perhaps lends some additional support to the notion that Jail personnel might also have acted to suppress Walters' grievance, which reported that same incident.[1] (*See* Durham Dep., Doc. 25, #354). Considering Walters' testimony in light of this other evidence, a reasonable jury could conclude that Walters filed a grievance, and that one or more

---

[1] Because Jones has not objected to the admissibility of this evidence for summary judgment purposes, the Court need not, and does not, decide any pertinent evidentiary issues at this time. The Court notes that inmates' claims that the Jail never responds to their grievances may be admissible as evidence of a routine practice or habit under Federal Rule of Evidence 406. Scuitto's alleged statement that Jail officers throw away grievances may qualify for Rule 807's residual exception to the rule against hearsay given the number of inmates who affirm that she made such a statement. Finally, Durham's statement about Ludwig's reaction to Durham's report of Jones is not necessarily hearsay to the extent that it establishes Ludwig's state of mind rather than the truth of any matter asserted under Rule 801(c)(2).

10

Jail officers, either inadvertently or intentionally, discarded or otherwise disregarded it.

Jones further argues that even if Walters can create a genuine dispute as to whether she filed the initial grievance, Walters did not exhaust her administrative remedies because she did not file an internal appeal. (Exhaustion Mot., Doc. 10, #57). That argument is self-defeating. Jones concedes that the requirement to file an appeal is triggered by the inmate's receipt of the Jail's "original response" to the inmate's grievance. (*Id.*). But, as Jones herself insists, the Jail says it has no record of any grievance that Walters filed in connection with the incident at issue here. (*See* Wietmarschen Decl., Doc. 9, #44). Unsurprisingly, then, there is also no record evidence showing that the Jail ever *responded* to any such grievance. (*See id.*). Because Walters never received a response to her initial grievance (assuming she filed one), she had nothing to appeal, and her failure to file an appeal thus cannot defeat her claim. *See Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("It is well established that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.") (citation and internal quotation marks omitted); *see also Singh v. Goord*, 520 F. Supp. 2d 487, 497 (S.D.N.Y. 2007) (summary judgment inappropriate where inmate stated he never received response to grievance he filed, such that he could not have appealed). Moreover, Walters does claim she filed at least one other grievance in connection with this incident and that it also was disregarded, and there is a copy of that allegedly filed later grievance in the record

11

(albeit one she, rather than the Jail, supplied). (*See* Walters Dep., Doc. 16, #158; *see also* 11/30/20 Grievance Form, Walters Dep. Ex. 8, Doc. 16-8, #195).

Because there is a genuine dispute as to whether Walters filed a written grievance to which the Jail never responded, the Court **DENIES** Jones's Motion for Judgment on the Pleadings (Doc. 10) based on failure to exhaust. Given the Court's decision on that issue, the Court need not, and thus does not, consider Walters' alternative argument that Walters' outcry immediately after Jones kicked her constituted an informal verbal grievance. (*See* Exhaustion Opp'n, Doc. 17, #208).

**B.   A Reasonable Jury Could Conclude That Jones Intentionally Kicked Walters And Thereby Used Excessive Force Against Her.**

Turning to the merits of this case, Walters' sole claim against Jones is that Jones's kick to Walters' head constituted excessive force in violation of the Fourth and Fourteenth Amendments. Force used against a pretrial detainee like Walters is excessive when it is not "objectively reasonable" in light of the surrounding facts and circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). In assessing the reasonableness of an officer's actions, factors to consider include the need to use force, the amount of force used, the extent of injury caused by the use of force, any effort to limit the amount of force used, the severity of the security problem, the threat the officer reasonably perceived, and any active resistance by the inmate against whom the officer used force. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Gratuitous violence is unreasonable by definition. *See, e.g.*, *Walters v. Stafford*, 317 F. App'x 479, 491 (6th Cir. 2009) ("Gratuitous violence is never reasonable.").

12

Jones's main argument for summary judgment on Walters' excessive force claim is that Jones kicked Walters in the head accidentally rather than intentionally. But a reasonable jury easily could believe otherwise. The video footage, which shows Jones running toward Walters, maneuvering around another officer, raising her leg, and rapidly extending it sideways until it hits Walters' head, is consistent with Jones kicking Walters intentionally, rather than accidentally. Indeed, at least one other officer at the scene, Durham, testified that she perceived Jones's kick as intentional. (Durham Dep., Doc. 25, #354). And another prison official, Kerr, saw it that way when he reviewed the footage as well. (Internal Affs. Mem., Walters Dep. Ex. 10, Doc. 16-10, #197).

If a jury concludes that the kick was intentional, the jury also could find that the kick constituted excessive force. There was no immediately apparent need to use *any* further force, given that Walters was already on the ground pinned down by four other officers. *See, e.g.*, *Judd v. City of Baxter, Tenn.*, 780 F. App'x 345, 348 (6th Cir. 2019) (excessive force to place knee on back of suspect on ground); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) (substantial pressure on back of suspect already subdued on ground excessive force). At the very least, a reasonable jury could find that Jones did not reasonably perceive any threat from the already-restrained Walters. *See Kingsley*, 576 U.S. at 397. Accordingly, Jones is not entitled to summary judgment on the issue of whether she used excessive force against Walters.

**C.     Jones Is Not Entitled To Qualified Immunity.**

"For a plaintiff to avoid summary judgment for the defendant based on qualified immunity, the plaintiff must show that the defendant (1) violated a constitutional right and (2) 'the violated right was clearly established when [the defendant] acted.'" *Banas v. Hagbom*, 806 F. App'x 439, 441 (6th Cir. 2020) (quoting *Shanaberg v. Licking Cnty.*, 936 F.3d 453, 455 (6th Cir. 2019)). To find a constitutional right "clearly established," the Court must determine that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This question hinges on the specific context of the case rather than a broad general proposition. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

Here, Walters' right not to have a corrections officer intentionally kick her in the head while four other officers pinned her to the ground was clearly established. The Sixth Circuit has repeatedly held not only that gratuitous violence is never objectively reasonable, *see Stafford*, 317 F. App'x at 491, but also more specifically that use of additional force against an individual whom other officers have already subdued on the ground violates clearly established constitutional rights, *see, e.g.*, *Judd*, 780 F. App'x at 348, *Champion*, 380 F.3d at 903. Indeed, Jones does not appear to argue that her conduct, if intentional, did not violate clearly established law. Instead, Jones seems to argue only that she is entitled to qualified immunity because she accidentally rather than intentionally kicked Walters. (*See* Mot. for Summ. J., Doc. 32, #502). That argument, though, fails for the reasons discussed above.

14

Because a reasonable jury could conclude (1) that Jones intentionally kicked Walters, (2) that the intentional kick constituted excessive force, and (3) that Jones is not entitled to qualified immunity, the Court **DENIES** Jones's Motion for Summary Judgment (Doc. 32).

**D.    Wallace's Expert Testimony Is Inadmissible Because It Would Not Assist The Jury In Determining A Material Issue In This Case.**

For her part, Walters has filed what she styles a Motion in Limine (Doc. 34) to exclude Wallace's expert testimony. Under Federal Rule of Evidence 702, expert testimony is subject to four requirements:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Or, as the Sixth Circuit has put it, "[f]or expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) her testimony to be relevant; and (3) her testimony to be reliable." *Osborn v. Griffin*, 865 F.3d 417, 452 (6th Cir. 2017) (citation omitted). In other words, courts have an important gatekeeping role to ensure that expert evidence assists, rather than detracts from, the factfinder's consideration of the material issues in a case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). And like any other evidence, expert testimony is subject to exclusion if it is not relevant under Federal Rule of Evidence 401, or if its probative value is outweighed by the danger of unfair prejudice, confusion, or waste of time under Rule 403.

Applying these standards, the Court determines that Wallace's opinions do not constitute competent expert evidence relevant to the determination of any material issue in this case. A jury considering the merits of Walters' excessive force claim against Jones would have to consider first and foremost whether Jones kicked Walters in the head accidentally or on purpose. Then, if it determined that Jones kicked Walters on purpose, the jury would have to decide whether that kick constituted an objectively unreasonable use of force under the circumstances.

Wallace's proposed expert report would not aid the jury in answering either of those questions. To start, Wallace does not express any opinion about whether Jones accidentally or intentionally kicked Walters. (*See* Wallace Rep., Wallace Dep. Ex. 5, Doc. 29-1, #455–56). Wallace also does not express any opinion about whether such a kick, if intentional, would have amounted to excessive force. (*See id.* at #456–57). Instead, Wallace states that the "contact" between "Deputy Jones' foot" and "Inmate Walters" was "minor and incidental" in relation to the altercation as a whole. (*Id.* at #456–57). Wallace also says that, overall, "the deputies in this situation" used "an insufficient amount of force." (*Id.* at #457).

These opinions would not assist the jury in assessing Walters' claim for excessive force against Jones. As discussed above, the excessive force inquiry considers whether a particular officer's discrete act applied force beyond what was objectively reasonable under the circumstances, not whether the average amount of force used by various officers in the course of the whole series of events fell above or below some arbitrary threshold. *See, e.g., Palma v. Johns*, 27 F.4th 419, 429 (6th Cir.

16

2022) (court considering excessive force claim based on extended incident must "segment the incident into its constituent parts" to determine reasonableness of each separate use of force) (citation and internal quotation marks omitted).

Here, Walters' sole claim is that Jones used excessive force against Walters by kicking Walters in the head. Thus, Wallace's opinions about the aggregate amount of force that the officers collectively used against Walters, or about the relative importance of a single kick weighed as part of this entire sequence of events, are beside the point. Moreover, this is not a complex case where the jury is likely to require or benefit from specialized knowledge concerning matters outside its own experience. *See, e.g.*, *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) ("[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person.") (citation omitted). There is no reason to doubt that a lay jury is entirely capable of watching the video, hearing the testimony, and reaching its own conclusions about the straightforward facts of this case. If anything, introducing the expert evidence at issue is more likely to confuse the jury than to assist it.

And even if Wallace's proposed expert conclusions were relevant or helpful to the jury, his report does not explain the "principles and methods" he used to reach his conclusions or how he applied any such principles and methods to the facts of this case. *See* Fed. R. Evid. 702(c)–(d). More specifically, Wallace does not refer to any general guidelines regarding appropriate use of force in correctional settings that he used to reach his conclusions. Instead he relies entirely on his own professional

17

background and personal understanding of "best practices in police conduct." (Wallace Rep., Wallace Dep. Ex. 5, Doc. 29-1, #453). Under Federal Rule of Evidence 702 and *Daubert*, such unadorned conclusions are insufficient, further supporting the inadmissibility of Wallace's testimony. *See Berry v. City of Detroit*, 25 F.3d 1342, 1352–54 (6th Cir. 1994) (conclusory testimony based on alleged expertise in vaguely-defined field of "police policies and practices" should have been excluded).

For these reasons, the Court **GRANTS** Walters' Motion in Limine (Doc. 34) to exclude Wallace's testimony.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Jones's Motion for Judgment on the Pleadings (Doc. 10) and Motion for Summary Judgment (Doc. 32). The Court also **GRANTS** Walters' Motion in Limine (Doc. 34) to exclude Wallace's testimony.

**SO ORDERED.**

March 30, 2022
**DATE**                                              **DOUGLAS R. COLE**
                                                      **UNITED STATES DISTRICT JUDGE**